IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| MYRL COPELAND, ) | |
| ELAINE BACKES, ) | |
| CYNTHIA HOWSER, ) | |
| ROBERT STARKE, ) | |
| CHARLES STARKE, ) | |
| STEVE REYNOLDS, and ) | |
| STANLEY HALDERMAN, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 04-4275-CV-C-NKL |
| ) | |
| ABB, INC., ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Pending before the Court is ABB, Inc.'s ("ABB") Motion for Summary Judgment. [Doc. # 31]. For the reasons set forth below, the Court grants in part and denies in part ABB's Motion.

Also pending before the Court is Plaintiffs' Motion for Partial Summary Judgment on the Issue of Liability [Doc. # 29]. For the reasons set forth below, the Court grants in part and denies in part Plaintiffs' Motion.[1]

**I.    Background**

    **A.    Bargaining History Between ABB and the Union**

---

[1] Plaintiffs have requested oral argument on their Motion. After a review of all the briefing, the Court finds that oral argument is unnecessary and denies Plaintiffs' request.

1

Plaintiffs are all current or former hourly employees at ABB's plant located in Jefferson City, Missouri. Plaintiffs' collective bargaining interests are represented by Local 2379, United Automobile Aerospace and Agricultural Implement Workers of America ("the Union").

In January 1999, ABB and the Union entered into a Collective Bargaining Agreement ("CBA"). Pursuant to Article IX, Section 3, of the CBA, ABB and the Union agreed that employees' leave for work-related injuries/illnesses would be governed by and subject to the laws of the State of Missouri. The effective dates of the negotiated CBA were February 1, 1999, through January 31, 2002.

In February 1999, ABB began implementing a policy regarding employees' follow-up medical care for work-related injuries. When an employee was injured on the job, the employee notified ABB. ABB paid the employee for any treatment the employee received the same day as the injury and ABB did not deduct any benefits for time the employee missed on the same day as the injury.

However, if the employee required follow-up medical care that required the employee to miss work during a regularly scheduled workday, ABB paid the employee for the time missed, but also deducted the amount of time missed from the employee's accrued paid leave benefits. For example, if an employee missed three hours of work for a follow-up medical visit for a work-related injury during the employee's regularly-scheduled workday, the employee received three hours of regular compensation, but the employee also lost three hours of paid leave time.

According to a supplemental agreement reached in October 1999 that modified the CBA, ABB would begin counting time away from work for follow-up medical visits as an unexcused absence unless the employee agreed to use the employee's paid leave time during the visit. The Union agreed to this modification.

In March 2000, the Union and ABB settled a set of grievances and ABB agreed to retroactively reinstate paid leave benefits for the period through March 15, 1999. The Union and ABB again agreed that employees would in the future use their paid leave benefits for follow-up medical treatment for work-related injuries.

The parties' CBA expired on January 31, 2002, and the supplemental agreements reached in October 1999 and March 2000 expired with it. To date, the parties have not been able to successfully negotiate a successor CBA.

### B. Cynthia Howser

With the exception of Cynthia Howser ("Howser"), Plaintiffs acknowledge that they received compensation for their follow-up doctors' appointments and that ABB's policy set forth in the CBA was applied to them.[2] Howser is the only Plaintiff who alleges that she was required to take unpaid absences to attend her follow-up medical treatments. Howser states that she was denied compensation for appointments on September 3, 2004; March 1, 2005; and March 4, 2005.

---

[2] In their Motion, Plaintiffs imply that they did not receive compensation for their follow-up medical visits. However, in Plaintiffs' Opposition to ABB's Motion, they clarify that Howser was the only employee who was not compensated for follow-up medical visits. *See* Pl. Opposition [Doc. # 38] at p. 14 n. 5.

It is undisputed that ABB played no direct role in scheduling Howser's three appointments. However, Howser alleges that Gallagher Basset Services, Inc. ("Gallagher"), made the appointments for her and its conduct binds ABB because it is ABB's third-party Workers' Compensation administrator. It is also undisputed that Howser's three appointments occurred during her normal working hours.

### 1. *Howser's September 3 Appointment*

Howser states that she was required to leave work early on September 3, 2004, to attend an appointment with Dr. Brenda Woods. Howser states that her early departure was considered an unpaid absence of 3.8 hours. Howser also alleges that her 3.8 hour unpaid absence was not properly considered when ABB calculated her overtime compensation for the workweek of August 30 through September 4, 2004. According to Howser, her hours worked that week were 45.75 hours, but her adjusted hours that included the time missed for her appointment should have been 48.325 hours.

According to Howser's Motion, Gallagher made the appointment for her with Dr. Woods and, in support of her allegation, she submits a letter from Gallagher to Dr. Woods indicating the date and time of the appointment. Also included is a letter from Gallagher to Howser's Workers' Compensation attorney asking that he advise Howser of the date and time of the appointment. ABB does not contest that Gallagher made the appointment. Instead, it states "Plaintiffs proffered no evidence that Gallagher [] scheduled the appointment for [] Howser without her input." However, ABB's contention is not supported by reference to any evidence. *See* ABB Opp. [Doc. # 37] at ¶ 19. Therefore,

4

Case 2:04-cv-04275-NKL   Document 44   Filed 02/07/06   Page 4 of 15

the Court will treat Howser's allegation as unrefuted.

### 2. *Howser's March 2005 Appointments*

Howser claims that she was required to take unpaid absences twice during the week of February 28 through March 4, 2005, for follow-up medical treatments. According to Howser, she had to take a 3.8 hour unpaid absence on March 1, 2005, for an appointment with Dr. James Kinderknecht. Dr. Kinderknecht recommended that Howser undergo follow-up tests and her tests were scheduled for March 4, 2005. She received an unpaid absence of 7.5 hours that day. Thus, for the week of February 28 through March 4, 2005, Howser received unpaid absences of 11.3 hours. Howser also alleges that her 11.3 hours of unpaid absence was not properly considered when ABB calculated her overtime compensation for this workweek. According to Howser, her adjusted hours worked that week that included her unpaid absences should have been 42.7 hours. Instead, Howser received compensation for 38.25 hours worked.

Regarding her March 1 appointment, Howser states that a case manager for Gallagher named Anita Hess ("Hess") made the appointment. However, ABB points out that Howser was directed to receive the follow-up care by the administrative law judge ("ALJ") in her Workers' Compensation proceeding. Hess attended the March 1 appointment with Howser and authorized the follow-up procedure that occurred on March 4. Dr. Kinderknecht's office made the appointment for March 4.

ABB claims that Howser voluntarily took unpaid leaves of absence to attend her follow-up appointments and that, according to the terms in the CBA, she had the option

5

of receiving compensation and taking paid leave or taking an unpaid absence to attend her appointments. ABB states that Howser chose the latter option for all three of the appointments identified and, in support of its proposition, points to Howser's deposition testimony and a letter submitted by her counsel. Thus, because Howser exercised her option to take unpaid leave, ABB asserts she is foreclosed from claiming that she did not receive compensation for her appointments.

### C. Plaintiffs' Complaint

Plaintiffs filed their Complaint against ABB in November 2004 [Doc. # 1]. Plaintiffs' Complaint consists of a one count claim that ABB violated the FLSA by requiring its employees to use paid leave benefits for their follow-up medical appointments for job-related injuries.

## II. Discussion

### A. FLSA Violation

Plaintiffs contend that ABB violated the Fair Labor Standards Act ("FLSA") because it required their employees to use their paid vacation benefits when they attended follow-up medical appointments for work-related injuries.

ABB moves for summary judgment based on the fact that the FLSA does not govern fringe benefits such as paid leave and that its scope is specifically limited to minimum wages and overtime compensation. In support of its argument, ABB directs the Court to the Department of Labor's ("DOL") website, which states:

> The FLSA does **not** require employers to give their employees time off for

6

holidays, vacations, or sick leave - either with or without pay.

http://www.dol.gov/elaws/esa/flsa/hoursworked/screenER14.asp (emphasis in original).

In another portion of its website, the DOL states:

> There are a number of employment practices which the FLSA does not regulate. For example, **the FLSA does not require**: (1) vacation, holiday, severance or sick pay; (2) meals or rest periods, holidays off, or vacations . . . (4) pay raises or fringe benefits . . . . The above matters, which are not covered by the FLSA, are generally for agreement between the employer and the employees or their authorized representatives.

http://www.dol.gov/elaws/esa/flsa/screen6.asp (emphasis in original). Thus, according to the terms on the FLSA website, the FLSA does not provide relief for Plaintiffs.

Furthermore, in *Boll v. Fed. Reserve Bank of St. Louis*, 365 F. Supp. 637, 646-47 (E.D. Mo. 1973), *aff'd*, 497 F.2d 335 (8th Cir. 1974), the judge held that the FLSA does not regulate paid leave benefits. The judge cited an older DOL opinion letter and held:

> The [FLSA] does not require defendant to pay plaintiff for the holiday hours and personal convenience time he [submitted to the court]. As stated in an opinion signed by Wage-Hour Administrator Clarence T. Lundquist on August 31, 1962, WHM 94:674:
>
> "There is no provision in the [FLSA] which requires the payment by employees for absence from work for vacation, holidays, illness, or any other reason. The granting of leaves of absence with or without pay is a matter of agreement between the employer and the employee, and the time need not be counted as working time."

*Id.* The judge stated that even if the holiday pay had been governed by the parties' employment contract, that does not bring it within the parameters of the FLSA and the statute provided no relief for plaintiff on that issue. *Id.* ("Even if the [employee manual] were a part of the contract between plaintiff and defendant, the failure to pay plaintiff for

7

holidays and personal convenience time would not constitute a violation of the [FLSA].").

Plaintiffs, nonetheless, argue that the hours spent at the appointments constitute hours worked and they must, therefore, be paid their wages - not their paid leave benefits. Plaintiffs state:

> Requiring an employee to use paid leave benefits in order to receive compensation for the time missed from work receiving medical care for a work-related injury is not the payment of wages. Rather, it is the forced use of another employment benefit in lieu of the payment of wages for time the DOL regulations provides constitutes "hours worked."

*See* Pl. Opp. [Doc. # 38] at p. 5. Plaintiffs are correct that ABB's policy is beneficial to the company and that, in effect, the employee bears the burden of attending the follow-up appointment because the time away from work is deducted from the employee's paid leave benefits. While Plaintiffs may be correct that the practice is unfair, they point to no provision of the FLSA or any other authority that requires them to be treated fairly. The Eighth Circuit has held that even Missouri's "liberal" Workers' Compensation statute was not sufficient to protect ABB's employees. *See Local 2379, United Automobile Aerospace and Agricultural Implement Workers of America v. ABB, Inc.*, 412 F.3d 982 (8th Cir. 2005). In contrast, the FLSA does not even contain a suggestion that it was intended to prohibit a requirement that employees use their vacations to get medical care for work related injuries.

Because all of the Plaintiffs concede that they were paid for their follow-up appointments, with the exception of Howser, the Court will grant ABB's Motion as to all Plaintiffs, except Howser.

8

### B. Howser

In her Opposition to ABB's Motion, Howser alleges that she did not receive compensation for the three medical appointments on September 3, 2004; March 1, 2005; and March 4, 2005.

ABB argues that Howser's claims regarding these three appointments are precluded because she opted to choose unpaid absences for them rather than receive her compensation. ABB's argument, however, ignores the fact that employees cannot waive their FLSA rights because they are statutory in nature. *See Reich*, 121 F.3d at 407.

Howser brings her FLSA claim under a regulatory provision that accompanies the FLSA. The provision states:

> Time spent by an employee in waiting for and receiving medical attention on the premises or at the direction of the employer during the employee's normal working hours on days when he is working constitutes hours worked.

29 C.F.R. § 785.43. Howser claims that the three appointments in dispute constituted "hours worked" and the parties do not dispute that if ABB directed Howser to receive her medical care, then ABB must pay her for those periods of time. ABB instead focuses on the fact that its employees played no role in scheduling her appointments. ABB states that Gallagher made the appointments and it, therefore, did not "direct" Howser to receive the follow-up care.

In a 1984 Opinion Letter, the DOL stated in response to an inquiry:

Q: Would there be any difference in the determination of "hours worked" depending on how the appointment was set up; that is, if the

>    employer's representative made the appointment rather than the
>    employee?
>
> A: Yes. If the employer or the employer's agent (insurance carrier) arranged for the employee to see a doctor during the employee's normal working hours, the time spent traveling to and from and visiting the doctor's office would be compensable hours of work. If the employer or the employer's agent arranged for the employee to see a doctor outside the employee's normal working hours, the time spent would not be compensable. If the follow-up visit to see the doctor was arranged by the employee, none of the time spent visiting the doctor's office would be compensable.

1987 DOL WH LEXIS 30 at *5 (Sept. 10, 1987). In a subsequent opinion letter, the DOL clarified its earlier position and advised that an employer need not compensate an employee for the time spent attending a follow-up medical appointment where the employer merely *approved* the time off to attend the appointment rather than *directed* the employee to attend the appointment. 1994 DOL WH LEXIS 61 (July 15, 1994).

Thus, according to the Opinion Letters from the DOL, if an agent of ABB made the appointments for Howser and directed her to attend, then her time spent at the appointments was compensable. However, if ABB merely approved her time off to attend the appointments, then her time was not compensable.

Courts give administrative opinion letters respect, but only to the extent the interpretations are persuasive. *Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)); *Chalenor v. Univ. of N. Dakota*, 291 F.3d 1042 (8th Cir. 2002). Some factors bearing on the persuasiveness of an opinion letter include whether it is consistent with the agency's other policies, the degree to which it is factually analogous to the case before the court, and the validity of its

10

reasoning. *Reich v. Delcorp, Inc.*, 3 F.3d 1181, 1186 (8th Cir. 1993) (citation omitted); *Timothy H. v. Cedar Rapids Cmty. Sch. Dist.*, 178 F.3d 968 (8th Cir. 1999) (rejecting opinion letter because not factually analogous).

Howser urges the Court to give limited deference to the 1994 Opinion Letter because it is inconsistent with the 1987 Opinion Letter; it provides little reasoning, and it is not factually analogous to the case before the Court.

The 1994 Opinion Letter is not so patently inconsistent with the 1987 Opinion Letter that it constitutes a conflicting position. According to the 1987 Opinion Letter, if the appointment is made by the employer, then it is compensable time. According to the 1994 Opinion Letter, if the employer merely approves time off for an appointment rather than mandating it, then the time is not compensable. These two issues are complementary in that they deal with different issues. They do not directly contradict one another.

While it is true that the 1994 Opinion Letter does not provide thorough reasoning, its result is logically derived from the language of the regulation. The regulation requires compensation for appointments that are "directed" by the employer. 29 C.F.R. § 785.43. Under the 1994 Opinion Letter, if the employer does not "direct" the appointment but merely consents to it, then it's not compensable. It appears that the 1994 Opinion Letter makes the subtle but important distinction between acquiescing to an appointment and mandating it--a distinction that is apparent from the language in the regulation. Thus, the conclusion of the 1994 Opinion Letter appears to be consistent with the plain language of the regulation.

11

Finally, the 1994 Opinion Letter is not factually analogous to Howser's situation, but it is more analogous than the 1987 Opinion Letter which is relied on by Howser. The 1987 Opinion Letter concerns only public safety employees, which is a restriction not found in the 1994 Opinion Letter. Moreover, the 1994 Opinion Letter deals specifically with on-the-job injuries, while the 1987 Opinion Letter deals only with medical care in general. Finally, the 1994 Opinion Letter specifically cites regulation 785.43, but the 1987 Opinion Letter makes no reference to that regulation.

Thus, it appears that the 1994 Opinion Letter is just as reliable as the 1987 Opinion Letter. Therefore, the Court will not disregard the 1994 Opinion Letter or its conclusion.

### 1. *Howser's September 3 Appointment with Dr. Woods*

ABB contends it is not liable for compensating Howser for her September 3 appointment with Dr. Woods because it did not direct her to attend nor did it make the appointment for her. Instead, ABB argues that Gallagher made the appointment.

Gallagher is clearly considered to be an agent of ABB. The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Additionally, the 1984 Opinion Letter contemplates that an entity acting on behalf of an employer can bind the employer for purposes of directing medical appointments. 1987 DOL WH LEXIS 30 at *5 ("If the employer or the employer's agent (insurance carrier) arranged for the employee to see a doctor during the employee's normal working hours, the time spent traveling to and from and visiting the doctor's office would be compensable hours of work.").

12

The evidence is undisputed that Gallagher is ABB's third-party Workers' Compensation administrator and that it handles the Workers' Compensation claims on behalf of ABB. Thus, Gallagher was acting on behalf of ABB.

The evidence is also undisputed that Gallagher directed Howser's September 3 appointment with Dr. Woods. Gallagher sent letters to both Dr. Woods and Howser's counsel confirming appointment times and asking Howser's counsel to convey the information to her. Thus, it is clear that Gallagher arranged for the visit with Dr. Woods on behalf of Howser. Gallagher's direction of Howser to Dr. Woods is consistent with Missouri law that states employers control the medical treatment in Workers' Compensation claims. *See* Mo. Rev. Stat. § 287.140(1). Gallagher, acting on behalf of ABB, decided to send Howser to Dr. Woods and there is no evidence that Howser played any role in the process.

Because Gallagher was acting on behalf of ABB and because it undisputedly made the appointment for her on September 3, ABB must compensate Howser for the 3.8 hours of work she missed on that day at her regular rate of pay. ABB must also recalculate Howser's overtime compensation for the week of August 30 through September 4, 2004, to determine if Howser is entitled to any additional overtime compensation. The Court grants Plaintiffs' Motion on this point. Because Plaintiffs' Motion goes to liability only, it leaves the issue of damages outstanding. In the event the parties cannot reach an agreement on the issue of damages, the damage hearing will occur on the March 6 docket as previously set.

13

### 2. *Howser's March 2005 Appointments with Dr. Kinderknecht*

Regarding the March 1 appointment, Ness apparently made the appointment for Howser, but it is clear that the Workers' Compensation ALJ directed Howser to obtain further follow-up treatment. Thus, the initiation of the appointment was not undertaken by Gallagher or ABB and, instead, it was directed by the ALJ. Under the plain terms of 29 C.F.R. § 785.43, and the advisory conclusion in the 1994 Opinion Letter, ABB merely acquiesced to Howser's appointment on March 1 with Dr. Kinderknecht and it did not direct or mandate her attendance at it.

Similarly, Howser's March 4 appointment was for follow-up procedures and tests recommended by Dr. Kinderknecht. Dr. Kinderknecht's office made the March 4 appointment and it arose directly from the March 1 consultation. It does not appear that Gallagher or ABB played any role in the initiation or the formation of the March 4 appointment.

Because neither Gallagher nor ABB directed Howser to obtain the March 1 and 4 appointments, the time is not compensable under the authorities cited above. At most, ABB agreed to allow Howser to attend the March 2005 appointments and this removes the appointments from the category of compensable time. Therefore, the Court will grant ABB's Motion on this point.

### III. Conclusion

Accordingly, it is hereby

ORDERED that Plaintiffs' and Defendant's Motions for Summary Judgment [Doc.

# 29 and Doc. # 31] are GRANTED in part.  The FLSA requires ABB to compensate Howser for the 3.8 hours of work she missed on that day at her regular pay and recalculate, if any, Howser's overtime compensation for the week of August 30 through September 4, 2004.  In all other respects, the Defendant's Motion for Summary Judgment is granted and the Plaintiff's Motion for Summary Judgment is denied.

                                                s/ Nanette K. Laughrey
                                                NANETTE K. LAUGHREY
                                                United States District Judge

Date:  February 7, 2006
Jefferson City, Missouri